**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VASANT THAKKAR and PRAFULLA THAKKAR, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 CV 3344 |
| v. | ) ) ) | Judge Pallmeyer Magistrate Judge Cox |
| STATION OPERATORS INC. d/b/a EXXONMOBILE CORS, EXXONMOBILE OIL CORP. and KELLY BISSIAS, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT KELLY BISSIAS' MOTION**
**TO DISMISS COUNT VI OF PLAINTIFFS' COMPLAINT**

**I.   INTRODUCTION**

Plaintiffs Vasant Thakkar and Prafulla Thakkar have brought suit against their former employer, STATION OPERATORS INC. ("SOI"), SOI's corporate parent, EXXONMOBIL OIL CORPORATION ("ExxonMobil")[1], and an SOI manager, KELLY BISSIAS ("Bissias"). Complaint ¶¶6, 8, 9.  In their Complaint, Plaintiffs allege that they were employees of both SOI and ExxonMobil, and refer to the two corporate entities by the collective term "Exxon".  *See* Complaint ¶¶6, 8.

Plaintiffs' Complaint contains six counts, and Plaintiffs have agreed to voluntarily dismiss Counts IV and V.  The remaining four counts allege both federal and state law claims.

---

[1] In the case caption and throughout the body of their Complaint, Plaintiffs incorrectly spell Defendant ExxonMobil's name as "ExxonMobile".  Additionally, Plaintiffs refer to Defendants SOI and ExxonMobil collectively as a single entity – "Exxon" – when in fact they are two separate corporate entities.  For purposes of this Motion to Dismiss Count VI only, Defendant Bissias does not contest Plaintiffs' characterization that she was an "employee of Exxon" (Complaint ¶9), provided that Plaintiffs contend that they were employees of that same alleged collective entity, SOI and ExxonMobil (*see* Complaint ¶6).  Defendant Bissias submits the attached Declaration of ExxonMobil Human Resources Advisor Christine Solis-Mendoza clarifying that in fact, both she and the two Plaintiffs were employees of the same entity, SOI.

Both Plaintiffs bring federal claims against "Exxon" for national origin and religious discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I), 42 U.S.C. §2000e *et seq.*, race discrimination in violation of 42 U.S.C. §1981 (Count II) and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* (Count III). Plaintiff Vasant Thakkar brings a state common law claim against Defendant Bissias for tortious interference with employment expectancy (Count VI).

It is the tortious interference claim in Count VI that is the subject of Defendant Bissias' Motion to Dismiss. Specifically, Plaintiff Vasant Thakkar alleges that he had a contract or reasonable expectation of a continued business relationship "with the Defendant Exxon"; that Defendant Bissias had knowledge of the contract or expectancy; that there was an intentional and unjustifiable interference by the Defendant Bissias "that induced or caused a breach of the contract or prevented the expectancy from ripening"; and that damage to Plaintiff Vasant Thakkar resulted from the alleged interference. Complaint ¶42. Bissias now moves to dismiss Vasant Thakkar's tortious interference claim on the grounds that Plaintiff Vasant Thakkar has not alleged, nor can he show, any facts that would demonstrate that it is plausible on its face to conclude that Defendant Bissias interfered with any alleged contract or expectation of business relationship with a ***third party***, which is a required element of the tort. Thus, to the extent that Plaintiff Vasant Thakkar alleges that Bissias interfered with his existing employment with Exxon (vs. some other potential employer), he cannot satisfy the third-party requirement. Furthermore, Vasant Thakkar does not allege, nor will he be able to show, any facts that would demonstrate that it is plausible on its face to conclude that Bissias acted with the malice required to overcome a supervisor's immunity from claims of tortious interference, another required element of the tort.

## II.    FACTUAL BACKGROUND

As noted above, Plaintiffs allege that they "both were employees of [Defendants] Station Operators Inc. D/B/A ExxonMobile Cors and ExxonMobile Oil Corp. within the meaning of 42 U.S.C. §2000e(f)". Complaint ¶6. Plaintiffs further allege that Defendant "Station Operators Inc. D/B/A ExxonMobile Cors (hereinafter referred to as Exxon) is a wholly owned subsidiary of the [Defendant] ExxonMobile Oil Corporation (hereinafter referred to as Exxon)" and "provides employees to staff and operate the service stations owned and leased by ExxonMobile Oil Corporation". Complaint ¶8. Defendant Kelly Bissias "was Vasant Thakkar's supervisor and is an employee of Exxon". Complaint ¶9. Accordingly, based on Plaintiffs' own Complaint allegations and the attached Declaration, it is undisputed that both Plaintiffs and Defendant Bissias were employed by the same corporate entity, whether designated as "Exxon" (by Plaintiffs, *see* Complaint ¶¶6, 9) or as "SOI" (by Defendant Bissias, *see* Solis-Mendoza Declaration ¶¶6, 7).

Plaintiffs were terminated from their employment on February 17, 2007 "for allegedly violating the company policy on driving and issues related thereto". Complaint ¶18. The policy under which Plaintiffs were terminated is described by Plaintiffs as "a company rule prohibiting employees from driving in pursuit of company business and transferring product between stores unless they received authorization from their managers". Complaint ¶17. By Plaintiffs' own account, in January, 2007, they transferred cases of windshield wiper fluid between the two service stations where they worked because the Aurora, Illinois store where Plaintiff Vasant Thakkar worked had run out of windshield wiper fluid and the Naperville, Illinois store where Plaintiff Prafulla Thakkar worked had a "surplus" of wiper fluid. Complaint ¶¶14-16. Plaintiffs transferred the cases of wiper fluid by driving between their respective service stations, after they

had gone off duty. Complaint ¶16. Plaintiffs contend that they were authorized to transfer the cases of wiper fluid between the two service stations by Defendant Bissias. Complaint ¶¶14-15.

### III.   ARGUMENT

Since the Supreme Court's decision in *Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007), the law of federal pleading has provided that a complaint may not survive a motion to dismiss under FRCP 12(b)(6) without some factual context sufficient to state a claim for relief that is "plausible on its face." *Id.* at 1965, 1973 n.14. Under *Bell Atlantic,* a complaint must actually suggest that plaintiff has a right to relief by providing factual allegations that raise the claimed right to relief above the speculative level. *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007); *Killingsworth v. HSBC Bank Nevada, NA,* 507 F.3d 614, 618 (7th Cir 2007). In this instance, Plaintiffs' Complaint fails this test on two fronts, as detailed below. First, it fails to allege any facts which would demonstrate that a tortious interference claim is "plausible on its face" against his supervisor, Defendant Bissias, a "non-third party" to the underlying employment relationship. Second, the Complaint fails to allege any facts which would plausibly demonstrate that Defendant Bissias acted with the malice required to overcome a supervisor's immunity from claims of tortious interference, another required element of the tort. For each of these reasons, Count VI must be dismissed.

    **A.  Vasant Thakkar's Tortious Interference Claim Must Be Dismissed Because There Was No Alleged Interference With A Third Party On Defendant Kelly Bissias' Part**

Count VI of Plaintiffs' Complaint purports to be a claim for tortious interference with employment expectancy by Plaintiff Vasant Thakkar against his former supervisor and individual Defendant Kelly Bissias. Specifically, Mr. Thakkar alleges that he had a "reasonable expectation of a continued business relationship with the Defendant Exxon" and that Defendant

4

Bissias "induced or caused a breach of the contract or prevented the expectancy from ripening". Complaint ¶42.

A claim for tortious interference "lies only against a ***third party*** who causes the employer/employee relationship to end." *Naeemullah v. Citicorp Servs., Inc.*, 78 F.Supp.2d 783, 793 (N.D. Ill. 1999) (emphasis added); *see also George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1331-32 (7th Cir. 1983) (affirming dismissal of tortious interference claim where a third party was not involved). Yet Plaintiff does not (and cannot) allege any facts in his Complaint which would, in the words of *Bell Atlantic* and its progeny, "plausibly" demonstrate that his supervisor, Bissias, was a "third-party" to his employment relationship with Exxon for purposes of a tortious interference claim. Nor does the fact that Plaintiff has chosen to name manager Bissias, instead of corporate entities SOI and ExxonMobil, as Defendants to his tortious interference claim constitute such an allegation, because his allegations against Bissias, his former manager, are tantamount to allegations against SOI (or "Exxon") itself. Viewed another way, given that a party cannot tortiously interfere with its own business relationships, Bissias, as an agent for SOI and Thakkar's immediate supervisor, cannot be liable for tortious interference, either, because she is not a third party to Thakkar's employment relationship with SOI. "Corporate officers, supervisors and co-workers – even those who have a hand in terminating the employee – 'are privileged to act on behalf of the corporation, using their business judgment and discretion'". *Naeemullah*, 78 F.Supp.2d at 793 (quotation omitted). The courts' rationale in recognizing this privilege is to grant corporate officers and managers more freedom in their decisionmaking process so that they are not dissuaded from taking action on their employer's behalf for fear of personal liability. *See Kopystecki v. Quality Books, Inc.*, 1992 U.S. Dist. LEXIS 17335 at *17 (N.D. Ill. Nov. 10,

1992).

The Seventh Circuit's decision in *Ali v. Shaw*, 481 F.3d 942 (7th Cir. 2007), is instructive. In that case, a terminated Cook County employee (Ali) brought suit against the Cook County Board in its official capacity and against one of the board commissioners (Shaw) in his individual capacity. Ali brought suit against Shaw individually for tortious interference with prospective economic advantage based on the fact that Shaw had requested that the Board terminate her for insubordination. The "insubordination" committed by Ali was her allegedly having made comments to Shaw "celebrating" his lost bid for reelection, comments that Ali denied having made. *Id*. at 943-44. The Seventh Circuit acknowledged that it was Shaw's influence which caused the County Board to terminate Ali, but nevertheless rejected Ali's tortious interference claim on the grounds that Commissioner Shaw was not a third party:

> . . . [Shaw] was certainly far from an intermeddling outsider: he was [Ali's] boss. In the corporate world, officers enjoy immunity from these types of claims provided that they took the action in pursuit of the legitimate interests of the company. . . . The relationship between Shaw, Ali, and the Board puts this case into the category of an employment decision rather than third-party interference.

*Id*. at 945-46 (citations omitted).

Applying *Ali* to the facts of this case, Defendant Bissias' actions in reporting Plaintiffs' transfer of product and driving on company business, like the Board Commissioner's alleged reporting of Ali's celebratory but insubordinate comments, falls "into the category of an employment decision rather than third-party interference". The fact that Plaintiffs dispute the veracity of Bissias' report that they did not have authorization to make the product transfer does not change this result. *See Ali*, 481 F.3d at 943-44, 946 (commissioner's report that employee was insubordinate in making remarks that the employee denied having made, which perhaps "boorish", did not constitute a tort under Illinois law). Plaintiff alleges no facts that could

plausibly lead to a different result here, and so Count VI must be dismissed under FRCP 12(b)(6) for failure to state a claim for relief.

### B. Plaintiff Has Failed To Allege Malice On Bissias' Part Which Might Overcome Her Privilege to Act On SOI's Behalf

As stated above, Bissias in her role as an SOI manager is privileged to act on behalf of the corporation. The only way for Plaintiff Vasant Thakkar to overcome this privilege is to show that Bissias acted maliciously – that is, with personal animosity toward him or in furtherance of her own personal interests, contrary to those of SOI. *See Naeemullah*, 78 F.Supp.2d at 793; *see also Ali*, 481 F.3d at 945-46; *Dallis v. Don Cunningham and Assoc.*, 11 F.3d 713, 717 (7th Cir. 1993) (managerial privilege in tortious interference cases may be overcome by showing that manager acted either solely for his own personal gain or solely to harm the employee). Only when an officer or manager's actions are "detrimental to the corporation and outside the scope of corporate authority" does his/her immunity cease to exist. *Fuller Co.*, 719 F.2d at 1333.

Thakkar does not allege any facts to support such a basis for relief, nor will he be able to show, that Bissias acted with the malice required to overcome a supervisor's immunity from claims of tortious interference. Bissias' actions were not detrimental to the corporation or motivated by her personal interests. Rather, based on Plaintiffs' own Complaint allegations, Defendants SOI and ExxonMobil had a company rule prohibiting employees from driving in furtherance of company business and from transferring store product without manager authorization. *See* Complaint ¶17. Plaintiffs do not deny that they drove in furtherance of company business and transferred product between their respective stores; in fact, they openly acknowledge in their Complaint that they both drove cases of windshield wiper fluid between the two service stations where they worked (*see* Complaint ¶¶14-16); rather, the only action they dispute is whether they had authorization from their managers to do so. Complaint ¶¶14-15, 40.

7

Although Plaintiff Vasant Thakkar alleges that Bissias "falsely" reported to agents of "Exxon" that the transfer of windshield wiper fluid was done without proper authority (Complaint ¶¶41-42), he does not allege that Bissias had any personal stake in enforcing SOI's rules against driving on company business or transferring product between stores or reporting Plaintiffs' violation of said rules, or that Bissias carried any personal animosity toward him or with the intent solely to harm him. *See Kopystecki*, 1992 U.S. Dist. LEXIS 17335 at *18-19 (complaint allegations that female plaintiffs' termination was motivated by an "unlawful animus against plaintiffs based on their sex" and was based on "lies about their performance" held insufficient to survive motion to dismiss where such allegations did not suggest that decisionmakers acted for their own personal interests or with personal hostility or resentment toward plaintiffs).

At most, all that Count VI recites are the basic elements of the tort being alleged, with the conclusory allegation that "Defendant Bissias intentionally and willfully interfered with Plaintiff's employment expectancy solely for her own benefit and/or to injury Plaintiff." Complaint ¶43. Under the law of federal pleading since *Bell Atlantic,* that allegation does not provide sufficient supporting facts to survive a motion to dismiss. Indeed, in *Bell Atlantic* the Court wrote that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires *more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .*" *Bell Atlantic,* 127 S.Ct. at 1964-65 (citations omitted, emphasis added). Yet, that is all that Plaintiff's Count VI does in this case – provide conclusory allegations and recited the elements of the alleged cause of action. That is not sufficient to prevent dismissal for failure to state a claim for relief  Consequently, as one of SOI's managers, Bissias is immune from Vasant Thakkar's claim of tortious interference, and for

8

that additional reason Count VI must be dismissed pursuant to FRCP 12(b)(6).

## IV.     CONCLUSION

For all the reasons set forth above, Defendant KELLY BISSIAS submits that the tortious interference with employment expectancy claim set forth in Count VI of Plaintiffs' Complaint should be dismissed for failure to state a claim, and Count VI being the only claim made against Bissias in this action, she should be dismissed as a party to Plaintiffs' lawsuit.

>     Respectfully submitted,
>
>     KELLY BISSIAS
>
>
>     By:  /s/ Tracey L. Truesdale
>         One of Defendant's Attorneys

Robert P. Casey (ARDC No. 00409049)
Tracey L. Truesdale (ARDC No. 06207891)
Matthew S. Levine (ARDC No. 6293222)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
20 S. Clark St., 25th Floor
Chicago, IL  60603
312-558-1220

Dated: August 7, 2008

*c/m: 003984-32*

9

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 7, 2008, the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT KELLY BISSIAS' MOTION TO DISMISS COUNT VI OF PLAINTIFFS' COMPLAINT was served by email transmission and first-class mail, postage prepaid, upon:

> Jeffery P. Gray, Esq.
> 27475 Ferry Rd.
> Warrenville, IL 60555
> Attorney for Plaintiffs

By: /s/ Tracey L. Truesdale
    One of Defendants' Attorneys

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VASANT THAKKAR and PRAFULLA THAKKAR, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 CV 3344 |
| v. | ) ) ) | Judge Pallmeyer Magistrate Judge Cox |
| STATION OPERATORS INC. d/b/a EXXONMOBILE CORS, EXXONMOBILE OIL CORP. and KELLY BISSIAS, | ) ) ) ) | |
| Defendants. | ) | |

### DECLARATION OF CHRISTINE T. SOLIS-MENDOZA

I, Christine T. Solis-Mendoza, do declare and state:

1. I am employed with Exxon Mobil Corporation ("ExxonMobil"). My current position with ExxonMobil is Human Resources Advisor, and I have held that position since May, 2008.

2. ExxonMobil owns a corporate entity called Station Operators Inc. ("SOI"), which in turn operates under the business name of "ExxonMobil CORS". SOI provides employees to staff and operate service stations that are owned and/or leased by ExxonMobil and located throughout the country.

3. Among my duties and responsibilities as Human Resources Advisor are understanding and administering ExxonMobil's personnel policies and practices, including ExxonMobil's procedures with respect to employee performance, conduct and discipline. Accordingly, in my capacity as Human Resources Advisor, I have regular access to employee personnel files and employment records for both current and former employees of ExxonMobil and SOI in the State of Illinois.

4. In my capacity as Human Resources Advisor, I have access to personnel records and employment data for the SOI personnel working in my geographic region.

5. If called upon to testify as a witness in the matter of *Vasant Thakkar and Prafulla Thakkar v. Station Operators Inc., ExxonMobil Oil Corporation and Kelly Bissias*, Case No. 08CV3344, currently pending in the United States District Court for the Northern District of Illinois, Eastern Division, I can competently testify to the matters and facts set forth in this declaration.

6. SOI's records show that the Plaintiffs in this case, Vasant Thakkar and Prafulla Thakkar, were employed with SOI at store locations in northern Illinois. Specifically, Vasant Thakkar worked at Store No. 12273 in Aurora, Illinois as an Assistant Store Manager, and his dates of employment were from November 21, 2000 until February 16, 2007. Prafulla Thakkar worked at Store No. 13264 in Naperville, Illinois as an Assistant Store Manager, and her dates of employment were from May 16, 2002 until February 16, 2007. Both Store No. 12273 and Store No. 13264 are located within the geographic region over which I have responsibility.

7. SOI's records show that Kelly Bissias, who is named as a Defendant in this case, has been employed with SOI since March 10, 2005. Ms. Bissias currently holds the position of Store Manager for Store No. 12273 in Aurora, Illinois, which is the same store where Vasant

Thakkar worked. From September, 2005 until February, 2007, Ms. Bissias was Mr. Thakkar's immediate supervisor.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 06, 2008.

_____
Christine T. Solis-Mendoza

LEXSEE 1992 US DIST LEXIS 17335


Analysis
As of: Jul 31, 2008

**BARBARA KOPYSTECKI and CARLA ZANOTTI, Plaintiffs, v. QUALITY BOOKS INC., JAMES HICKEY and ANTHONY LEISNER, Defendants.**

No. 92 C 1742

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1992 U.S. Dist. LEXIS 17335*

November 10, 1992, Decided
November 12, 1992, Docketed

**DISPOSITION:** [*1] We dismiss count IV of plaintiffs' complaint, although we dismiss it without prejudice and grant plaintiffs leave to amend within thirty days.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employees (employees) brought an action against defendants, former employer (employer), president, and employee, for discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), *42 U.S.C.S. § 2000e et seq.*, intentional infliction of emotional distress, and interference with an employment relationship and prospective economic advantage. Defendants filed a motion for summary judgment or for dismissal.

**OVERVIEW:** The employees claimed that defendants discriminated against them as women because, among other things, they were held to higher standards and paid less than male managers. They filed an action for violation of Title VII, intentional infliction of emotional distress, and interference with an employment relationship and prospective economic advantage. Defendants filed a motion for summary judgment or, alternatively, for dismissal. The motion was denied with regard to the impact of signed releases on the Title VII claims because the releases were ambiguous. Claims for violations occurring prior to the 300-day filing period were time-barred, however, because the employees failed to show a continuing violation that tolled the limitations period. There was no continuing violation because the employees did not establish that the past acts were inexorably linked to the violations which fell within the period. Further, the acts were not covert but depicted overt and fairly blatant acts which should have triggered the employees' awareness of a violation of their rights. The state law tort claims were dismissed because the employees failed to allege that defendants acted maliciously.

**OUTCOME:** The court partially denied defendants' motion for summary judgment or dismissal of the complaint for gender discrimination but it granted the motion with regard to acts which occurred prior to the limitations period. The court also granted defendants' motion to dismiss the employees' claim for tortious interference with prospective economic advantage, although it dismissed the claim without prejudice and gave the employees time to amend.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN1] A grant of summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant has the burden of demonstrating a lack of a

Case 1:08-cv-03344 Document 15-3 Filed 08/07/2008 Page 2 of 7

Page 2
1992 U.S. Dist. LEXIS 17335, *

genuine issue of material fact. In making this determination, the court examines the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, resolving all doubts in favor of the non-movant. *Fed. R. Civ. P. 56(c)*. For that purpose the court is not required to draw every conceivable inference from the record, only those inferences that are reasonable, in favor of the non-movant.

*Civil Procedure > Judgments > Relief From Judgment > Discharge, Release & Satisfaction*
*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN2] A release does not waive claims under Title VII of the Civil Rights Act of 1964 unless it meets the following three requirements: 1) it must be unambiguous; 2) the employee must knowingly and voluntarily consent to the release; and 3) the release must be supported by consideration.

*Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*
[HN3] In Illinois, ambiguity exists when either the agreement itself is unclear or when, although the agreement itself is clear, anyone familiar with the real-world context of the agreement wonders what it means with reference to the particular question that arises. A contract is ambiguous if it is capable of more than one meaning.

*Civil Rights Law > Practice & Procedure > Continuing Violations*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Statutes of Limitations > Continuing Violations*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Statutes of Limitations > Estoppel, Tolling & Waiver*
[HN4] For federal courts to have jurisdiction over claims under Title VII of the Civil Rights Act of 1964 (Title VII), an Equal Employment Opportunity Commission charge must be filed within 300 days after the alleged unlawful employment practice occurs. *42 U.S.C.S. § 2000e-5(e)*. An exception to this rule exists when there is a "continuing violation" of Title VII, which allows the 300-day filing period to be tolled until the date of the last discriminatory act.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Deferral*
[HN5] Generally, with regard to claims under Title VII of the Civil Rights Act of 1964, Equal Employment Opportunity Commission charges must be filed within 180 days after the alleged discriminatory act. However, in deferral states such as Illinois, that period extends to 300 days. *42 U.S.C.S. § 2000e-5(e)*.

*Civil Rights Law > Practice & Procedure > Continuing Violations*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Statutes of Limitations > Continuing Violations*
[HN6] Mere allegations that plaintiffs have experienced discrimination in the past that relate to a present violation are not enough to establish a continuing violation of Title VII of the Civil Rights Act of 1964 (Title VII). The continuing violation theory cannot be used to revive old claims only because they are related to a present result. Rather, the past acts must be "inexorably linked" to the Title VII violation which falls within the filing period. Under one scenario, a continuing violation exists when a series of discrete acts expose a discriminatory practice or pattern, the most recent of which comes within the filing period. Generally, the employer's discrimination is subtle or covert, so that the employee discovers the discriminatory motive and violation only after the pattern emerges. On occasion, a "pattern" case is found where the past acts are not covert. However, such cases are only actionable where the employer continues to have the power to correct such discrimination but does not, despite repeated complaints from the employee.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN7] In Illinois, plaintiffs must plead the following elements in order to state a claim for intentional interference with prospective economic advantage: 1. Plaintiff has a reasonable expectancy of entering into a valid business relationship; 2. Defendant knows of plaintiff's expectancy; 3. Defendant intentionally interferes in plaintiff's expectancy, preventing it from ripening into a valid business relationship; 4. Plaintiff suffer damages from defendant's interference. In addition, there is a

Case 1:08-cv-03344    Document 15-3    Filed 08/07/2008    Page 3 of 7

Page 3
1992 U.S. Dist. LEXIS 17335, *

stricter pleading requirement when defendant's conduct is privileged; plaintiffs are then required to allege that defendants acted maliciously.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > Tortious Interference With Business Relations*
*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Defenses > General Overview*
*Torts > Business Torts > Commercial Interference > General Overview*

[HN8] Privileges such as the privilege for corporate officers and directors that apply to claims for tortious interference with contracts, also apply in actions for tortious interference with prospective economic advantage. It is plaintiffs' burden, therefore, to demonstrate that defendants' conduct is malicious. This requires plaintiffs to show that the officers acted with personal animosity against plaintiffs and for their own personal interests, contrary to those of the corporation. Thus, plaintiffs must establish that defendants harbored a desire to harm them. Corporate officers are privileged to act on behalf of their corporations, using their business judgment and discretion.

**JUDGES:** MORAN

**OPINION BY:** JAMES B. MORAN

**OPINION**

### MEMORANDUM AND ORDER

Plaintiffs Barbara Kopystecki (Kopystecki) and Carla Zanotti (Zanotti) bring this action against their former employer, Quality Books, Inc. (Quality Books), and its employees, James Hickey (Hickey) and Anthony Leisner (Leisner). Plaintiffs allege gender discrimination in the workplace under Title VII, *42 U.S.C. § 2000e, et seq.*, against Quality Books (count I), state law violations of intentional infliction of emotional distress (counts II and III), and tortious interference with an employment relationship and prospective economic advantage against Hickey and Leisner (count IV). Defendants move for summary judgment or, in the alternative, for dismissal of plaintiffs' complaint. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### I. FACTS

[HN1] A grant of summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman, 905 F.2d 1040, 1044 (7th Cir. 1990).* [*2] The movant has the burden of demonstrating a lack of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).* In making this determination, we examine the "pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits," resolving all doubts in favor of the non-movant. *Fed.R.Civ.P. 56(c).* For that purpose we are "not required to draw every conceivable inference from the record, only those inferences that are reasonable," in favor of the non-movant. *Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).* The facts recited reflect the above standard.

Kopystecki began employment with Quality Books in April 1990. From the latter part of 1990 until June 1991, Kopystecki was the director of marketing services and a member of Quality Books' management team. Zanotti was hired by Quality Books in April 1985. She became a member of the management team in April 1991, and held the position of acting national sales manager from April 1991 until June 1991.

On June 11, 1991, Hickey, Quality Books' president-elect, terminated Kopystecki and Zanotti's employment. [*3] Hickey informed them that he was creating his own management team and that he did not want Kopystecki or Zanotti to be a part of the team. According to plaintiffs, Hickey offered both Kopystecki and Zanotti money; however, Zanotti had the alternative option of remaining at Quality Books for an additional seven weeks from June 11, 1991, to use its facilities while seeking other employment. Plaintiffs were told they must decide that day whether they would accept the payment arrangement. That afternoon both Kopystecki and Zanotti accepted the payment. They signed documents that included the following paragraph:

In lieu of future compensation from or claims against Quality Books Inc., the parties have entered into this agreement. This agreement includes any claims for unused vacation days, personal days, unclaimed comp time or unreimbursed travel expenses. All written and verbal agreements related to bonus programs are hereby rendered null and void.

Prior to signing, plaintiffs discussed the document between themselves but did not meet with an attorney to go over its contents. Based on conversations with Hickey and the language in the documents, plaintiffs believed that they had only [*4] released claims with respect to those defined in the second and third sentences of the above-quoted paragraph.

On October 18, 1991, Kopystecki and Zanotti filed charges of discrimination with the EEOC, alleging that their terminations were the result of sexual discrimination by Quality Books. In their complaint plaintiffs reiterate this allegation and further claim that as a result of

Quality Books' unlawful employment practices plaintiffs lost compensation and bonuses. Specifically, plaintiffs claim that as women members of Quality Books' management team they were not afforded the same privileges as their male counterparts; they were held to higher standards of performance and received less pay than their male counterparts; and they were intentionally excluded from management team meetings where strategic business policy was discussed and that exclusion from such meetings deterred their ability to perform their jobs and "make their bonus pay". In addition, plaintiffs allege a state tort claim of intentional infliction of emotional distress against Quality Books, as well as two tort claims against Hickey and Leisner of intentional infliction of emotional distress and tortious interference [*5] with prospective economic advantage.

Before this court is defendants' motion for summary judgment, or in the alternative for a dismissal, on the following grounds: that plaintiffs released all claims, including Title VII claims, against Quality Books when they signed the releasing documents; that, assuming the Title VII claims are prohibited because of the signed releases, there is no independent basis of federal jurisdiction for the pendent state claims; that plaintiffs' Title VII claims that did not occur within 300 days of the filing with the EEOC are time-barred; and that plaintiffs have failed to plead and cannot prove essential elements of their claim for intentional interference with employment relationship and prospective economic advantage.

## II. DISCUSSION

### A. Count I

Defendants move for dismissal of plaintiffs' Title VII claims on two grounds. First, defendants assert that the documents signed by plaintiffs on June 11, 1991, effectively released all future claims against defendants, thereby prohibiting plaintiffs from asserting Title VII claims before this court. Defendants are correct in their assertion that an effective release of Title VII claims would [*6] prevent a lawsuit on this issue. *Riley v. American Family Mutual Insurance Company, 881 F.2d 368, 371 (7th Cir. 1989)*. However, [HN2] a release will not waive Title VII claims unless it meets the following three requirements: 1) it must be unambiguous; 2) the employee must knowingly and voluntarily consent to the release; and 3) the release must be supported by consideration. *Id. at 372-75*.

Defendants contend the releases should be enforced as written because there is no ambiguity within the four corners of the documents. We disagree. [HN3] In Illinois, ambiguity exists when either the agreement itself is unclear or when -- although the agreement itself is clear -- "anyone familiar with the real-world context of the agreement would wonder what it meant with reference to the particular question that has arisen." *Federal Deposit Insurance Corp. v. W.R. Grace & Company, 877 F.2d 614, 620 (7th Cir. 1989), cert. denied 494 U.S. 1056 (1990)*. As defendants point out, a contract is ambiguous if it is capable of more than one meaning. *MacDonald-Smith v. FMC Corp., 713 F.Supp. 264, 268 n.2 (N.D.Ill. 1989), [*7] aff'd 902 F.2d 37 (7th Cir. 1990)*. Such is the case here, where a plain reading of the document leaves open the question as to what claims the parties released when they signed the document. The document is vulnerable to two interpretations: one, that *all* claims were released, and the other, that only claims concerning vacation time and other items referred to within the paragraph, and perhaps other accrued employment benefits, were released. Given this ambiguity, we must resort to extrinsic evidence to interpret the meaning of the documents and the intent of the parties. *Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 456 (7th Cir.), cert. denied, 112 S.Ct. 373 (1991)*.

The extrinsic evidence put forth by the parties is conflicting and fails to resolve the meaning of the documents. Plaintiffs, in their affidavits, refer to conversations with Hickey where he indicated that the agreement only referred to claims for specific amounts owed plaintiffs. Plaintiffs further contend that based on the amount of money received, they considered the payments to be severance, including amounts [*8] owed them for vacation and personal days or "amounts in lieu of notice," and not payments for a general release. The defendants, on the other hand, put forth opposing evidence, attempting to prove that the documents stated "claims," which meant *all* claims. A question of fact exists as to the meaning of the documents. Therefore, summary judgment is denied with respect to the impact of the release on the Title VII claims. [1] *Lumpkin, 933 F.2d at 456* (where parties dispute extrinsic evidence on an ambiguous contract, a factfinder must be called upon to determine the intent of the parties).

---

1  Plaintiffs further contend that the documents were not effective releases because the second and third requirements were not satisfied Plaintiffs argue that they did not knowing and voluntarily sign the documents and contend that required "consideration" was not given in exchange for the releases. We do not address these arguments since we have concluded the documents to be ambiguous and have denied summary judgment, as further consideration as to the meaning of the documents is necessary.

[*9] Second, defendants argue that any claims made by plaintiffs arising from earlier than 300 days before their charges were filed with the EEOC are time-barred and should be dismissed. We agree. [2]

2   Defendants calculated the cutoff date as 300 days prior to when plaintiffs' filed their amended charge with the EEOC. This calculation is in error as the relevant date is when the earliest charge that is reasonably related to the present charge is filed with the EEOC. *Movement for Opportunity and Equality v. General Motors Corp., 622 F.2d 1235, 1279 (7th Cir. 1980)*. We are unable to calculate the exact cutoff date since we were not provided with the original filing date; however the relevant date is 300 days before plaintiffs' original filings with the EEOC. All parties agree that plaintiffs filed their EEOC charges within 300 days of the June, 1991, terminations.

[HN4] For federal courts to have jurisdiction over Title VII claims, an EEOC charge must have been filed within 300 days after the [*10] alleged unlawful employment practice occurred. *42 U.S.C. § 2000e-5(e)*. [3] An exception to this rule exists when there is a "continuing violation" of Title VII, which allows the 300-day filing period to be tolled until the date of the last discriminatory act. *Zewde, 601 F.Supp. at 1243*. Plaintiffs argue that earlier alleged acts of discrimination were part of a pattern of discrimination and constituted a continuing violation of Title VII. They maintain that the time for filing their EEOC charge was tolled until the date they were fired (June 1991) and the 300-day time limitation was therefore met. We disagree.

3   [HN5] Generally, EEOC charges must be filed within 180 days after the alleged discriminatory act. However, in deferral states such as Illinois, that period extends to 300 days. *42 U.S.C. § 2000e-5(e); Zewde v. Elgin Community College, 601 F. Supp. 1237, 1241 (N.D. Ill. 1984)*.

[HN6] Mere allegations that [*11] plaintiffs experienced discrimination in the past that relate to a present violation are not enough to establish a continuing violation. [4] *Arna v. Northwestern University, 640 F.Supp. 923, 926 (N.D. Ill. 1986)*. The continuing violation theory cannot be used to revive old claims only because they are related to a present result. Rather, the past acts must be "inexorably linked" to the Title VII violation which falls within the filing period. *Id.* The continuing-violation doctrine has been reviewed in detail by the Seventh Circuit and the court has identified only a few isolated incidents where a continuing violation exists. *Stewart v. CPC International, Inc., 679 F.2d 117, 120-121 (7th Cir. 1982)*. plaintiffs appear to be relying on the third type mentioned by the *Stewart* court. Under that scenario, a continuing violation exists when a series of discrete acts expose a discriminatory practice or pattern, the most recent of which comes within the filing period. *Id. at 121; Arna, 640 F.Supp. at 926*. Generally, the employer's discrimination has been subtle [*12] or covert, so that the employee discovers the discriminatory motive and violation only after the pattern has emerged. [5] *Id., Arna, 640 F.Supp. at 926*. Plaintiffs do not describe covert or subtle employment practices, but instead depict a situation involving overt and fairly blatant acts by Quality Books. For instance, plaintiffs speak of repeated occasions where only women managers were excluded from management meetings, were criticized in front of their subordinates and were denied privileges afforded to their male counterparts. In addition, the alleged discriminatory acts appear to have gone on for a relatively long time in a fairly frequent manner, indicating that plaintiffs should have become aware that Quality Books might have been unlawfully discriminating against them. [6] These activities, occurring over a three-year time span, should have triggered plaintiffs' awareness of violations of their rights. There is no continuing violation and plaintiffs cannot now require Quality Books to defend claims arising from employment practices that are long past. [7] *Caldwell v. National Association of Home Builders, 771 F.2d 1051, 1056 (7th Cir. 1985)* [*13] (citation omitted). Plaintiffs cannot recover for the earlier alleged acts of discrimination. [8]

4   In fact, from the complaint it is not clear what if any claims or allegations plaintiffs are making regarding incidents before their terminations in June 1991. Plaintiffs merely state that from "at least 1988 through [plaintiffs'] terminations in June, 1991" females in management positions were discriminated against. Plaintiffs do not refer to any specific events before the 300-day cutoff and do not seem to be asserting Title VII claims during that period. Rather, plaintiffs appear to be providing background information and relevant evidence of discrimination to support the claims that their terminations were in violation of Title VII. While these earlier acts may provide relevant evidence when considering whether plaintiffs' terminations were discriminatory, plaintiffs cannot recover under Title VII for the earlier alleged acts. *United Air Lines v. Evans, 431 U.S. 553, 557 (1977); Zewde, 601 F.Supp. at 1243 n.5*.

5   On occasion, a "pattern" case is found where the past acts have not been covert. However, such cases are only actionable where the employer continues to have the power to correct such discrimination but does not, despite repeated complaints from the employee. *Arna, 640 F. Supp. at 926*.

[*14]

6   Defendants point out that plaintiffs stated in their complaint that they had protested to their

Case 1:08-cv-03344   Document 15-3   Filed 08/07/2008   Page 6 of 7

Page 6
1992 U.S. Dist. LEXIS 17335, *

superiors about Quality Books' alleged unequal treatment of female employees. While it is significant that plaintiffs voiced their concerns to their superiors, it is not determinative, given the absence of detail in the facts regarding when or how often such complaints were made.

7 Three elements are usually considered when determining if this third "pattern" situation constitutes a continuing violation. These factors are: 1) subject matter -- whether the alleged acts involve the same type of discrimination; 2) frequency of acts; and 3) degree of permanence (generally considered the most important factor) -- which should trigger the employee's awareness of and duty to assert her rights. *Zewde, 601 F.Supp. at 1242-43* (citation omitted). While we consider each of these factors when assessing whether there is a continuing violation, we have focused our discussion on the third element, as it is the determinative factor in this case.

8 As mentioned previously, earlier alleged acts may constitute relevant background evidence. *Caldwell, 771 F.2d at 1057*.

[*15] **B.** *counts II and III*

Defendants move for dismissal of the state law claims alleged in counts II and III. Defendants argue that because plaintiffs released their Title VII claims, there is no independent basis of federal jurisdiction for the state claims and they should be dismissed under the doctrine of pendent jurisdiction. [9] We have not dismissed plaintiffs' Title VII claims. Therefore defendants' argument fails.

9 Defendants further argue that count III should be dismissed because of the agreement signed by plaintiffs allegedly releasing Quality Books from all claims. Given our earlier conclusion that the agreement was ambiguous, this argument fails and awaits further determination by the trier of fact.

**C.** *Count IV*

In count IV, plaintiffs claim that defendants Hickey and Leisner tortiously interfered with prospective economic advantage. [10] [HN7] In Illinois, plaintiffs must plead the following elements in order to state a claim for intentional interference with prospective economic advantage:

[*16] 1. Plaintiff has a reasonable expectancy of entering into a valid business relationship;

2. Defendant knows of plaintiff's expectancy;

3. Defendant intentionally interferes in plaintiff's expectancy, preventing it from ripening into a valid business relationship;

4. Plaintiff suffer damages from defendant's interference.

*Dynabest Inc. v. Yao, 760 F.Supp. 704, 712 (N.D. Ill. 1991)* (citation omitted). In addition, there is a stricter pleading requirement when defendants' conduct is privileged -- plaintiffs are then required to allege that defendants acted maliciously." *Fellhauer,* 154 Ill.Dec. at 657; *King v. Levin, 132 Ill.Dec. 752, 755 (Ill.App. 1989)*.

10 Plaintiffs' caption for count IV reads, "Tortious interference with an employment relationship and with prospective economic advantage," indicating two potential causes of action, one for interference with employment contracts and one for interference with prospective economic advantage. Plaintiffs' allegations in count IV, however, indicate that plaintiffs are only claiming a cause of action for interference with prospective economic advantage. Plaintiffs verify this in their memorandum in opposition to defendants' motion for summary judgment.

[*17]
11 [HN8] Privileges such as the privilege for corporate officers and directors that apply to claims for tortious interference with contracts, also apply in actions for tortious interference with prospective economic advantage. *Fellhauer v. City of Geneva, 154 Ill. Dec. 649, 657 (Ill. 1991)*.

The policy behind the "corporate officer" privilege is to give officers and directors more freedom in their decisionmaking process and not dissuade them from taking action on behalf of the corporation for fear of personal liability. Hickey and Leisner were privileged as corporate officers to act on behalf of Quality Books, using their business judgment and discretion. [12] *George A. Fuller Company v. Chicago College of Osteopathic Medicine, 719 F.2d 1326, 1333 (7th Cir. 1983)*. It is plaintiffs' burden, therefore, to demonstrate that defendants' conduct was malicious. This requires plaintiffs to show that the officers, Hickey and Leisner, acted with personal animosity against plaintiffs and for their own personal interests -- contrary to those of the corporation. [*18] *Medina v. Spotnail, Inc., 591 F. Supp. 190, 197 (N.D.Ill. 1984)*. Thus, plaintiffs must establish that defendants harbored a desire to harm them. *Levin, 132 Ill.Dec. at 758; Langer v. Becker, 126 Ill.Dec. 203, 206 (Ill. App. 1988)*.

12 As noted by several courts, we are not dealing here with "outsiders intermeddling maliciously in the business affairs of the corporation."

Corporate officers are "privileged to act on behalf of their corporations, using their business judgment and discretion." *Fuller, 719 F.2d at 1333*; *Cromley v. Board of Education of Lockport, 699 F.Supp. 1283, 1299 (N.D. Ill. 1988)*; *Fellhauer, 154 Ill.Dec. at 658*.

Plaintiffs fail to properly allege that defendants acted maliciously. They do not allege that Hickey or Leisner acted for their own personal interests or that defendants acted with personal hostility or [*19] resentment against plaintiffs. Furthermore, there is no allegation that defendants were acting contrary to the interest of Quality Books. Plaintiffs merely allege that their terminations were "the culmination of a campaign against them orchestrated by [defendants], which included lies about their performance," and that plaintiffs were "motivated by an unlawful animus against plaintiffs based on their sex." Such generalized pleading is insufficient to adequately set out a claim for intentional interference with prospective economic advantage.

We, therefore, dismiss count IV of plaintiffs' complaint, although we dismiss it without prejudice and grant plaintiffs leave to amend within thirty days.

JAMES B. MORAN,

Chief Judge, U.S. District Court

November 10th, 1992.